IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ELAINE J. SHIPLEY, *Individually, as Personal Representative of the Estate of Kurt Philip Shipley, Deceased, and as Next Friend of Jordon John Shipley, Brynn Shipley, Jason Kent Shipley, Jensen Kurt Shipley, minors*,<br><br>Plaintiff,<br><br>v.<br><br>FOREST LABORATORIES,<br><br>Defendant. | MEMORANDUM DECISION<br><br>Case No. 1:06-cv-00048-TC-DBP<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Dustin B. Pead |

## I.  INTRODUCTION

This wrongful death products liability matter was referred to the Court under 28 U.S.C. § 636(b)(1)(A).  (Docket No. 19.)  The Court now considers Plaintiff's motion to quash subpoenas duces tecum that Defendant served on nonparties.  (Dkt. No. 36.)  For the reasons set forth below, the Court **GRANTS** the motion.

## II.  PROCEDURAL HISTORY

In April 2004, Plaintiff's husband committed suicide while under the influence of Lexapro, an antidepressant medication that Defendant manufactured.  (Dkt. No. 1 at 12.)  In January 2006, Plaintiff brought a Utah state court medical malpractice action against the medical practice, physician, and nurse practitioner who prescribed Plaintiff's husband the Lexapro.  (Dkt. No. 38-

1.)  The state court action was entitled *Shipley v. Julien*.  Plaintiff alleged that the *Julien*

defendants negligently breached their duty of care to Plaintiff's husband, leading to his death.

(*Id.* at 3.)

In August 2010, Plaintiff and defendants in the *Julien* action came to a confidential

settlement agreement.  (Dkt. No. 36 at 3.)  On August 30, 2010, the Utah state court approved the

settlement and sealed the file in the *Julien* action.  (Dkt. No. 36-4.)

In April 2006, Plaintiff brought the current action against Defendant in this federal district

court.  (Dkt. No. 1.)  Plaintiff alleges that Defendant is strictly liable for designing,

manufacturing, and marketing the defective product Lexapro, which Defendant failed to label

with adequate suicidality warnings.  (*Id.* at 13.)

In contrast to the *Julien* action, which involved "medical negligence claims against health-

care providers," the current federal action involves "products liability claims against a

pharmaceutical manufacturer . . . ."  (Dkt. No. 43 at 6.)

## III.    PLAINTIFF'S MOTION TO QUASH SUBPOENAS

On May 22, 2014, Defendant served a subpoena duces tecum on the law firm (Dewsnup

King & Olsen) that represented Plaintiff in the *Julien* action.  Defendant also served two

subpoenas duces tecum on the law firm (Richards, Brandt, Miller & Nelson) that represented the

defendants in the *Julien* action.  The subpoenas seek:

> All documents evidencing settlement of the litigation captioned *Elaine Shipley, individually and as personal representative of heirs of Kurt Shipley v. Craig K. Julien, M.D., et al.*, Case No. 06070028, filed in the Second Judicial District, Davis County, Utah, including any executed settlement agreements, executed release of claims, and probate court approval of same.

(Dkt. Nos. 36-1 to 36-3.)

On June 9, 2014, Plaintiff filed this motion to quash Defendant's subpoenas because they seek confidential and irrelevant settlement information, and producing the information would place an undue burden on the subpoenaed nonparties. (Dkt. No. 36.) The Court **GRANTS** Plaintiff's motion on relevance grounds. Therefore, the Court will not address Plaintiff's remaining arguments for quashing the subpoenas.

### A. Whether Settlement Agreement is Relevant to Defendant's Damages

Plaintiff moves to quash Defendant's subpoenas because the settlement information from the *Julien* action bears no relevance to the current federal action. (Dkt. No. 36 at 4-5.) *See* Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense . . . ."). Plaintiff emphasizes that the *Julien* action and this federal action "involve different claims against different parties based on different theories of liability . . . ." (Dkt. No. 43 at 6.)

Defendant counters that Plaintiff's "claims in *Julien* were based on the same events as the[] claims" in the current federal action. (Dkt. No. 38 at 3.) Therefore, the *Julien* settlement is relevant because "it may lead to information about damages that can be brought into evidence at trial." (*Id.*) (citing *Tanner v. Johnston*, 2:11-cv-00028-TS-DBP, 2013 WL 121158, at *4 (D. Utah Jan. 8, 2013) (unpublished) ("[D]iscovery into negotiations can be based on the reasonable belief that it may produce information on the question of damages that can be brought into evidence independent of the settlement context.")). More specifically, the "amount [the *Julien* defendants] paid to settle the claims against them is relevant to [Defendant's] share of Plaintiffs' total damages . . . ." (Dkt. No. 38 at 4.)

Initially, the Court questions Defendant's reliance on *Tanner v. Johnston* to support its relevance argument. *Tanner* involved a single lawsuit where plaintiffs brought overlapping

claims against two sets of defendants. *Tanner*, 2013 WL 121158, at *3. The defendants carried joint and several liability on these overlapping claims. *Id.* As a result, this Court concluded that portions of the settlement agreement between plaintiffs and the settling defendants relating to those overlapping claims were relevant to the non-settling defendants to determine their liability. *Id.* at *4.

Unlike *Tanner*, the present situation involves two lawsuits with different defendants, different causes of action, and no joint or several liability. *See Tanner*, 2013 WL 121158, at *5 ("[T]he Court does not believe settlement information unrelated to [] overlapping claims is relevant to the [non-settling] [d]efendants where it does not impact their potential liability or damages.").

Instead, Defendant in this federal action is liable only "for its proportionate share of [] Plaintiff's damages . . . ." (Dkt. No. 36 at 5.) UTAH CODE ANN. § 78B-5-818(3) ("No defendant is liable to any person seeking recovery for any amount in excess of the proportion of fault attributed to that defendant . . . ."). Indeed, Defendant cannot obtain any contribution, credit, or offset for its damages based on amounts paid in the *Julien* settlement. (Dkt. No. 36 at 5.) UTAH CODE ANN. § 78B-5-820(2) ("A defendant is not entitled to contribution from any other person.").

Under these circumstances, the Court concludes that the *Julien* settlement agreement is not obviously relevant to calculating Defendant's damages. The *Julien* defendants presumably settled Plaintiff's damages for medical malpractice whereas here Plaintiff seeks damages from Defendant for products liability. Moreover, as Plaintiff notes, "[w]hatever [] [P]laintiff and the *Julien* defendants thought about [] [P]laintiff's damages and the *Julien* defendants' relative share of fault is not evidence; it is just the opinion of two parties or their counsel, expressed in

settlement negotiations." (Dkt. No. 43 at 4.) As such, Defendant's arguments about relevance regarding its damages are too speculative to be sufficiently relevant at this time.

**B. Whether Settlement Agreement is Relevant to Prove Witness Credibility and Bias**

Defendant also argues that the prior settlement is relevant because the *Julien* defendants "will be important witnesses in this case" and their settlement agreement "terms could have an impact on [their] witness credibility and bias." (Dkt. No. 38 at 3-4.) *See Hydro Eng'g, Inc. v. Petter Invs., Inc.*, 2:11-cv-00139-RJS-EJF, 2013 WL 6635163, at *3 (D. Utah Dec. 17, 2013) (unpublished) (concluding that settlement affidavit drafts that settling defendant rejected were relevant to assess settling defendant's "potential bias, interest and credibility . . . ."); *Tanner*, 2013 WL 121158, at *5-6 (finding settlement agreement terms "related to [] overlapping claims" against settling and non-settling defendants were relevant to establish settling defendants' "witness credibility and bias . . . .").

Plaintiff challenges Defendant's arguments about credibility and bias. Plaintiff asserts that the *Julien* defendants "were never adverse to" Defendant in this action, and "the settlement in *Julien* did not give the *Julien* defendants any incentive to collude with [] [P]laintiff against" Defendant. (Dkt. No. 43 at 5 n.14.)

The Court agrees with Plaintiff's position. Without more information about the *Julien* defendants' credibility and bias issues, Defendant's arguments on these issues are too speculative to demonstrate relevance. *See Digital Ally, Inc. v. Z3 Tech., LLC*, No. 09-2292-KGS, 2012 WL 2366713, at *3 (D. Kan. June 21, 2012) (unpublished) (rejecting plaintiff's request to see settlement agreement between defendant and third-party to determine their witness credibility because plaintiff failed to "show[] that [third-party] ha[d] a financial interest in the outcome of

the litigation between [plaintiff] and [defendant] or how [plaintiff] would use the agreement to impeach any witnesses.").

At this point in time, the Court believes Defendant can sufficiently challenge any potential credibility and bias issues "by asking" the *Julien* defendants if Plaintiff "previously made a claim against [them] and whether the claim was resolved." (Dkt. No. 43 at 5.)

## IV.    ORDERS

For the reasons analyzed above, this Court **GRANTS** Plaintiff's motion to quash the subpoenas duces tecum that Defendant served on the law firms Dewsnup King & Olsen as well as Richards, Brandt, Miller & Nelson. (Dkt. No. 36.)

Dated this 18th day of July, 2014.               By the Court:

Dustin B. Pead
United States Magistrate Judge