IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH, NORTHERN DIVISION

| | |
|---|---|
| ELAINE J. SHIPLEY, *Individually, as Personal Representative of the Estate of Kurt Philip Shipley, Deceased, and as Next Friend of Jordon John Shipley, Brynn Shipley, Jason Kent Shipley, Jensen Kurt Shipley, minors*,<br><br>    Plaintiff,<br><br>v.<br><br>FOREST LABORATORIES,<br><br>    Defendant. | MEMORANDUM DECISION<br><br>Case No. 1:06-cv-00048-TC-DBP<br><br>District Judge Tena Campbell<br><br>Magistrate Judge Dustin Pead |

## I. INTRODUCTION

On April 24, 2006, Plaintiff filed this products liability wrongful death action. (Dkt. No. 1.) Plaintiff alleges that Defendant designed, manufactured, and marketed Lexapro, a defective anti-depressant that led Plaintiff's husband to commit suicide. Plaintiff also alleges that Defendant failed to provide adequate suicide warnings for Lexapro.

On July 31, 2014, Plaintiff filed a motion to compel Defendant to produce paper documents and electronically stored information ("ESI") from custodial files belonging to four of Defendant's sales representatives who Plaintiff plans to depose. (Dkt. No. 48.) These representatives contacted the healthcare providers who treated Plaintiff's husband. On August 12, 2014, Defendant filed a cross-motion for protective order asking the Court to find it was not required to produce custodial ESI. (Dkt. No. 55.)

On Tuesday, August 26, 2014, this Court held a hearing on the parties' motions. For the reasons discussed at the hearing and set forth below, the Court **GRANTS** in part and **HOLDS IN ABEYANCE** in part Plaintiff's motion, and **DENIES** in part and **HOLDS IN ABEYANCE** in part Defendant's motion.

## II. PROCEDURAL HISTORY

On June 14, 2006, this case was transferred to the Eastern District of Missouri as part of an MDL involving fifty-seven cases. (Dkt. No. 5.) The MDL was formed "to consolidate for pretrial and discovery purposes cases alleging that Celexa or Lexapro . . . could cause individuals to commit suicide." (Dkt No. 54 at 3.)

### A. MDL Procedural History

On December 21, 2006, the MDL court issued a Case Management Order for use as a discovery form for all cases pending in the MDL. (Dkt. No. 48-4, Ex. E.) On February 29, 2008, Defendant signed the Case Profile Form ("CPF") pertinent to this case. (Dkt. No. 48-1, Ex. B.)

Within the CPF, Defendant identified all its sales representatives who contacted the healthcare providers who prescribed Plaintiff's husband Lexapro. (*Id.*, Section B.1.i.a.) Defendant identified Collings, Fisher, Fullmer, and Kotter as sales representatives. (*Id.*)

Pertinent here, CPF Section B.1.iii asked Defendant:

> For each sales representative and medical liaison identified above, *please identify and produce all documents from his/her custodial files, including all traditional 'paper' documents, and computer files pertaining to Lexapro* . . . and any issue regarding suicide, suicidality, akathisia, motor akathisia, CNS stimulation, central nervous system stimulation, agitation, irritable, irritability, tremor, emotional lability, insomnia, insomnolence, nervousness, anxiety, fidgety, fidgeting, restless, restlessness, wired, excited, excitement, and/or efficacy in the adolescent or adult population.

(Dkt. No. 48-1, Ex. B, Section B.1.iii) (emphasis added.)

Defendant responded to the aforementioned CPF request as follows:

> The parties agree that Defendants will do the following in compiling information responsive to the request made in this section (B)(1)(iii): (a) *instruct current sales representatives, and ask former sales representatives, to look through their paper files for materials* pertaining to the terms identified in the preceding sentence; and (b) *with respect to electronic data, Defendants will retrieve active electronic data pertaining to current sales representatives* and search that data for the terms identified in the preceding sentence using EnCase. Defendants are not required to image any hard drives or restore or search any back-up tapes in responding. The parties agree that *responsive information will be produced 45 days before each sales representative's deposition* and not by February 15, 2008.

(*Id.*) (emphasis added.)

Counsel representing other plaintiffs in the MDL deposed "[a] few" of Defendant's sales representatives, but [P]laintiff's counsel in this case never asked to depose a sales representative in the MDL." (Dkt. No. 54 at 4.) At the hearing before this Court, Defendant specified that only three sales representatives were deposed in the MDL proceedings.

**B.  Remand Procedural History**

On February 5, 2009, the MDL court remanded this case back to the Utah District Court. (Dkt. No. 48-5, Ex. F.) On March 7, 2014, Magistrate Judge Furse set the parties' fact discovery deadline to April 30, 2014. (Dkt. No. 30.) On April 25, 2014, this Court extended fact discovery to June 30, 2014. (Dkt. No. 32.) On June 26, 2014, this Court extended the fact discovery deadline to July 30, 2014. (Dkt. No. 40.)

On May 30, 2014, when the fact discovery deadline was still June 30, 2014, Plaintiff's counsel contacted Defendant's counsel to schedule depositions for Defendant's sales representatives Collings, Fullmer, Kotter, and Fisher. (Dkt. No. 48-6, Ex. G.) Plaintiff also demanded that, prior to the depositions, Defendant produce the paper documents and custodial ESI described in CPF Section B.1.iii.

On June 25, 2014 and July 2, 2014, Defendant's counsel responded to Plaintiff's deposition and document request. Defendant agreed that Plaintiff could depose the sales representatives. Defendant's counsel stated that Defendant would direct its current sales representatives Collings and Fullmer to search their paper documents as required in the CPF. (Dkt. No. 48-2, Ex. C.) Kotter and Fisher no longer worked for Defendant. Therefore, Defendant would ask them to search their paper documents as required in the CPF. (*Id.*)

However, Defendant's counsel refused Plaintiff's request for ESI as untimely. Defendant emphasized that, given the then-June 30, 2014 fact discovery deadline, Defendant would not have 45 days as mandated by the CPF to produce the ESI. (*Id.*)

On July 25, 2014, the parties agreed that Plaintiff could depose sales representatives Collings and Fullmer on August 15, 2014. (Dkt. No. 48-10, Ex. K.) However, this Court stayed those depositions pending its resolution of the motions below. (Dkt. No. 57.)

### III. PLAINTIFF'S MOTION TO COMPEL & DEFENDANT'S CROSS-MOTION FOR PROTECTIVE ORDER

#### A. Whether Custodial Files for Former Sales Representatives Required

Defendant argues that, under the CPF, Defendant bears no obligation to produce custodial ESI for Fisher and Kotter as they no longer worked for Defendant when Plaintiff requested their depositions. (Dkt. No. 54 at 11-12.) Admittedly, "with respect to electronic data," the CPF only requires Defendant to "retrieve active electronic data pertaining to *current* sales representatives . . . ." (Dkt. No. 48-1, Ex. B, Section B.1.iii) (emphasis added.)

However, at the August 26, 2014 hearing before this Court, Defendant conceded that it had preserved custodial files for its sales representatives back in 2008 when Fisher and Kotter still worked for Defendant. The Court interprets Defendant's preservation actions to mean that the CPF imposed an obligation to produce custodial ESI files for sales representatives who were

currently working for Defendant in 2008 when Defendant signed the CPF.  Therefore, this Court believes Defendant bears a continuing obligation under the CPF to produce the custodial ESI for Fisher and Kotter.

### B. Whether Plaintiff's Request for Custodial Files is Untimely

Defendant also opposes Plaintiff's motion to compel because Plaintiff "misinterprets" the CPF.  (Dkt. No. 54 at 2.)  Defendant notes that, unlike Defendant's counsel, Plaintiff's counsel in this case "were not involved in [] negotiations of the [CPF]."  (Dkt. No. 56 at 1.)  Defendant claims that, in the negotiations, all "plaintiffs in the MDL acknowledged it would not be feasible (or necessary) for [Defendant] to cull, process, and produce custodial information for hundreds of sales representatives that might never be deposed."  (Dkt. No. 54 at 5.)  Consequently, the parties agreed that a plaintiff's request to "depose a given sales representative triggered [Defendant's] obligation to cull, process, and produce the information 45 days in advance of the sales representative's deposition."  (*Id.*)

When Plaintiff requested sales representatives' depositions on May 30, 2014, Defendant did not have 45 days to produce custodial files before the then-June 30, 2014 fact discovery deadline.  Given this lack of time, Defendant opposes Plaintiff's motion to compel as untimely.

The Court shares Defendant's concerns about Plaintiff's decision to delay requesting depositions until May 30, 2014.  However, the Court rejects Defendant's timeliness argument because the Court can remedy any untimeliness issues by extending the fact discovery deadline in this case.

### C. Whether Undue Burden of ESI Production Outweighs Benefit of Production

"The court may, for good cause, issue an order to protect a party . . . from . . . undue burden or expense" by "forbidding the . . . discovery . . . ."  Fed. R. Civ. P. 26(c)(1)(A).  Additionally,

"[a] party need not provide discovery of [ESI] from sources that the party identifies as not reasonably accessible because of undue burden or cost." *Id.* 26(b)(2)(B).

### i.  *Likelihood that ESI Exists*

Defendant moves for a protective order because "[t]he likelihood the custodial ESI contains discoverable information [] is slim" when "compared with the burden of producing that data and [P]laintiff's years-long delay in seeking the depositions . . . ." (Dkt. No. 54 at 2.)

Defendant reiterates that Plaintiff's husband committed suicide on April 29, 2004.  Notably, Defendant's sales force did not receive company "e-mail accounts until late 2004, months after" the suicide.  (*Id.* at 12.)  In fact, the sales force "did not receive company laptops until the June-July 2005 time frame." (*Id.*)  "Prior to that, sales representative used Jornada PDA devices to store and download" company data.  (*Id.*)  The Jornada devices had no e-mail capability, and could only store and download sales call information, which Defendant "already has produced." (*Id.*)  Defendant also produced call notes, as well as "sales and marketing materials it provided to its sales representatives to use with physicians . . . and labeling (package inserts) for Lexapro . . . ." (Dkt. No. 54 at 13-14.)

Plaintiff argues that the information produced by Defendant does not "include any . . . documentation related to specific information provided to the sales representatives by [Defendant]." (Dkt. No. 65 at 4.)  For instance, the information produced does not include what sales representatives were instructed to say in response to healthcare providers' questions about suicide risks.  (*Id.*)  This concerns Plaintiff because one of Defendant's sales representatives deposed in another case admitted that Defendant instructed her not to proactively discuss Lexapro's side effects.  (*Id.*)

### ii. Burden of Producing ESI Given Low Likelihood Relevant ESI Exists

Regarding undue burden, Defendant notes "[t]his case has been pending for more than seven years and [P]laintiff had more than five years to request depositions of [Defendant's] sales representatives. She opted not to do so and her untimely and burdensome discovery demands should be rejected as a result." (Dkt. No. 54 at 3.)

Defendant explains that producing the custodial ESI at this point would take "at least weeks, and perhaps months . . . ." (*Id.* at 9.) Defendant would have to cull the ESI, it would then be "processed by a vendor (the search terms run across the corpus of data culled by [Defendant]," and then Defendant would have to manually review the results for privilege "document by document, and page by page." (*Id.*) At the hearing, Defendant feared it would cost thousands of dollars to run this full search.

The Court shares Defendant's burden concerns in light of the allegedly low likelihood that responsive ESI exists. However, the Court is also concerned by Defendant's admission at the hearing that it does not know the volume of responsive documents that exist, how long it will take to process them, and how much such a process will cost. The Court cannot speculate about Defendant's burden without more information.

### IV. ORDERS

The Court **GRANTS** in part and **HOLDS IN ABEYANCE** in part Plaintiff's motion to compel. (Dkt. No. 48.) The Court **DENIES** in part and **HOLDS IN ABEYANCE** in part Defendant's cross-motion for protective order. (Dkt. No. 55.)

The Court **ORDERS** Defendant to run a preliminary search of the custodial files belonging to sales representatives Collings, Fullmer, Kotter, and Fisher using the search terms and temporal time limits provided in the CPF. That is, Defendant must run a preliminary search for responsive

documents containing the search terms in CPF Section B.1.iii and the temporal time limit in CPF Section B.1.i. of January 1, 2001 until three (3) months after Plaintiff's husband committed suicide.

Within **two (2) weeks** from the date of this order, Defendant must submit a certification to the Court identifying the volume of responsive documents identified in its preliminary search and the approximate cost Defendant will incur in running a full search through its vendor and through privilege review.

If Defendant fails to file a certification, the Court will grant in full Plaintiff's motion to compel. If Defendant certifies that no responsive documents were identified, Defendant must serve this certification on Plaintiff. When the Court receives Defendant's certification, the Court will determine whether the burden of producing such custodial documents outweighs the benefit of production.

If the Court determines that Defendant must produce custodial documents in compliance with the CPF, Defendant must produce them by **October 15, 2014**. The Court encourages the parties to conduct the sales representatives' depositions soon thereafter, but no later than **December 1, 2014**.

The Court extends the parties' fact discovery deadline to **December 1, 2014.** The Court extends the parties' dispositive motion deadline to **January 2, 2014**. The Court encourages the parties to file dispositive motions far in advance of this deadline. All other deadlines remain the same.

Dated this 29th day of August, 2014.    By the Court:

Dustin Pead
United States Magistrate Judge